Case 1:21-cv-00154 Document 28 Filed on 06/08/22 in TXSD Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
June 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARLENE A DOUGHERTY, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 1:21-CV-154 |
| § | |
| U.S. DEPARTMENT OF HOMELAND § | |
| SECURITY, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER AND OPINION

Plaintiff Marlene A. Dougherty filed this civil action against the United States Department of Homeland Security and several unidentified DHS employees for allegedly unlawfully accessing and tampering with her computer network and telecommunications systems. Dougherty pursues claims under the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), and 18 U.S.C. § 1030 (Computer Fraud and Abuse Act ("CFAA")), which prohibits fraud in connection with computers. In addition, Dougherty alleges a Texas state-law conspiracy claim and a *Bivens* action against the unnamed defendants.

The United States challenges the Court's subject matter jurisdiction over Dougherty's causes of action on the grounds that the ECPA and CFAA do not waive the United States's sovereign immunity, and that Dougherty failed to exhaust her administrative remedies as to her SCA claim. In addition, the United States argues that the statute of limitations bars Dougherty's claims under the ECPA and CFAA, and that the causes of action against the Doe Defendants fail under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court concludes that Dougherty's claims do not survive the motion to dismiss.

I.      **Allegations and Procedural History**[1]

Since 2004, Plaintiff Marlene A. Dougherty has practiced immigration law in Brownsville, Texas, "serving those who are the victims of the unauthorized practice of law, or the ineffective assistance of prior counsel." (Am. Complt., Doc. 7, ¶ 5)

DHS has targeted Dougherty "in retaliation for [her] lawful actions taken on behalf of her clients, and/or because of her race." (*Id.* at ¶ 1)  This retaliation has included a "pattern and practice of excessive and unlawful investigations of plaintiff including unauthorized interceptions and disclosures of aural communications, and wrongful allegations disseminated to third parties to interfere in plaintiff's protected lawful business and personal activities." (*Id.* at ¶ 12) Specifically, Dougherty's "aural communications have been intercepted and disclosed", "her stored communications have been accessed and altered", and "pleadings and other documents that she has written to be filed with the Courts have been accessed and altered". (*Id.* at ¶ 17)  For example, in December 2018, she returned to a draft of a legal document on her computer system after a several-hour break, and discovered that someone had altered and "tampered" with the draft. (*Id.* at ¶ 22)  The recurring intrusions have rendered her practice of law "extremely time consuming and difficult as citations to materials in her documents for the federal court are changed without authorization". (*Id.*)  She also has been "locked out" of several online accounts with immigration agencies and has experienced difficulties registering for and signing into DHS-related accounts. (*Id.* at ¶¶ 24–26)  In addition, she has received an anonymous voice message detailing her private religious information, and was targeted by an anonymous Twitter "parody"

---

[1] For purposes of considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts a plaintiff's well-pleaded allegations as true, but does not accept as true legal conclusions couched as factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

account. (*Id.* at ¶¶ 33–35). She maintains that "[a]ll appearances are that the acts are in retaliation for plaintiff's work on behalf of her clients." (*Id.* at ¶ 32)

Dougherty specifies that these unwanted and unlawful actions have been ongoing "since at least 2010." (*Id.* at ¶ 36) In 2016, she retained a security expert "to review suspected unauthorized computer and document access, as citations and designations to exhibit pages would change and plaintiff repeatedly had to redo them." (*Id.* at ¶ 19) Two years later, she hired an outside organization to "run a security check", which she repeated in 2020. (*Id.* at ¶¶ 21, 23) By no later than 2018, she suspected interference with her QuickBooks account, leading her to manually maintain her office finances. (*Id.* at ¶ 30–31)

Within the past two years, she received anonymous voice messages "in which law enforcement could be heard in the background", including one message in which a "raging" law enforcement officer referred derogatorily to her and an officer made a lewd, disturbing statement. (*Id.* at ¶ 39) Since she filed her lawsuit, however, these "abusive timewasting phone calls" have ceased. (*Id.* at ¶ 45)

In October 2021, Dougherty filed her Original Complaint, in which she requested a temporary restraining order to prevent Defendants from destroying potential evidence related to this case. (Complt., Doc. 1) The Court denied the TRO request. (Order, Doc. 3) Dougherty then amended her Complaint. (Am. Complt., Doc. 7) The United States now moves under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss each of Dougherty's causes of action contained in the First Amended Complaint. (Motion, Doc. 24)

II. Analysis

A. Standard of Review

Dismissal under Rule 12(b)(1) is proper where "the court lacks the statutory or constitutional power to adjudicate the case." *Home Builder's Ass'n of Miss., Inc. v. City of Madison*, 143 F. 3d 1006, 1010 (5th Cir. 2014). The plaintiff bears the burden of proving that a

district court has jurisdiction by a preponderance of the evidence. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When a Rule 12(b)(1) motion is filed alongside other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). A plaintiff satisfies the facial plausibility standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the complaint are not required to be thoroughly detailed, but must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court considers only the allegations in the complaint and must accept them as true, viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). If the allegations are sufficient "to raise a right to relief above the speculative level," the court will not dismiss the cause of action. *Twombly*, 550 U.S. at 555.

### B. Claims against DHS

Dougherty alleges claims against DHS under the ECPA, the SCA, and the CFAA. She alleges that DHS violated the ECPA by intentionally intercepting, disclosing, and using her communications without her consent, so as to stalk and harass her. (Am. Compl., Doc. 7, ¶ 93–95) As to the SCA, she alleges that DHS intentionally gained control of her online accounts and accessed and controlled her electronic communications while those communications were stored

with email providers. (*Id.* at ¶ 144) And as to the CFAA, she alleges that DHS intentionally and without authorization accessed her protected computer to obtain information. (*Id.* at ¶ 193)

The United States argues that the Court lacks subject matter jurisdiction over each of these three statutory claims. For the following reasons, the Court agrees.

### 1. Sovereign Immunity

The United States advances the initial argument that the ECPA and CFAA do not waive the United States's sovereign immunity. (Motion, Doc. 24, 4, 6)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The statutory text must "unequivocally" waive the immunity, and courts construe any ambiguities in favor of immunity. *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012). "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id.* at 290–91. "The party claiming federal subject matter jurisdiction has the burden of proving it exists." *Peoples Nat. Bank v. Off. of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).

First, the Court concludes that the ECPA does not waive the United States's sovereign immunity. This statute authorizes an individual to assert a claim against a "person or entity, other than the United States." 18 U.S.C. § 2520(a). The express exclusion of suits against the United States is unambiguous, and courts have relied on this text to dismiss ECPA claims alleged against the United States. S*ee, e.g., Merisier v. Johnson Cnty., Tex.*, No. 4:20-CV-00520-SDJ-CAN, 2021 WL 1720153, at *4 (E.D. Tex. Feb. 4, 2021), *rep. & rec. adopted*, No. 4:20-CV-520-SDJ, 2021 WL 1709913 (E.D. Tex. Apr. 29, 2021) ("[A]ny potential claim [under 18 U.S.C. § 2520] against [Defendant] in his official capacity is precluded by sovereign immunity".); *Lott v. United States*, No. 4:10-CV-2862, 2011 WL 13340702, at *4 (S.D. Tex. May 31, 2011), *rep. & rec. adopted*, No. CV H-10-2862, 2011 WL 13340701 (S.D. Tex. June 17, 2011) ("Although a person may bring a civil

cause of action under [18 U.S.C. § 2520] under some circumstances, the United States is specifically excepted as a permissible defendant.").

Dougherty claims that a circuit split exists as to whether the United States can be sued under the ECPA. (Response, Doc. 26, 5–6 (relying on *Whitaker v. Barksdale Air Force Base*, No. 14–2342, 2015 WL 574697, at *5 & n.10 (W.D. La. Feb. 11, 2015))) But *Whitaker* does not help her. That case concerned whether the ECPA allows suits against *state* government entities, noting that a circuit split exists as to that issue. *Whitaker*, 2015 WL 574697, at *5 & n.10. In contrast, on the matter of whether the ECPA waived the federal government's sovereign immunity, the Louisiana district court was clear: "The plain text of 18 U.S.C. § 2520(a) demonstrates unmistakably that the federal government has not waived its sovereign immunity to permit a suit for civil damages under ECPA against itself or its agencies." *Id.* at *8.

Second, Dougherty fails to demonstrate that the CFAA waives the United States's sovereign immunity for suit under that statute. While she correctly notes that the word "person" in the statute includes the United States government and its agencies, she identifies no statutory text suggesting the waiver of the United States's sovereign immunity, much less doing so unequivocally. As Dougherty has failed to satisfy her burden of proving subject matter jurisdiction under this section, the Court must dismiss Dougherty's CFAA claim for lack of subject matter jurisdiction.

### 2. Administrative Exhaustion

The United States also argues that the Court lacks subject matter jurisdiction over Dougherty's SCA claim because she failed to exhaust her administrative remedies. (Motion, Doc. 24, 5)

Through the SCA, Congress created an avenue for claimants to seek money damages from the United States for willful violations of the statute. 18 U.S.C. § 2712(a). The plaintiff, however, can commence the lawsuit "only after a claim is presented to the appropriate department or

agency *under the procedures of the Federal Tort Claims Act*". 18 U.S.C. § 2712(b)(1) (emphasis added). Under the FTCA, a claimant may not initiate an action against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing". 28 U.S.C. § 2675(a). "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.* "Furnishing notice is a *jurisdictional* prerequisite to filing suit under the FTCA." *Cook v. U.S. on Behalf of U.S. Dep't of Lab.*, 978 F.2d 164, 166 (5th Cir. 1992) (emphasis added).

Dougherty's allegations fail to demonstrate that she satisfied the procedural requirements. She contends in her Response that she satisfied the notice requirement because on the same day she filed this lawsuit, she "e-mailed Notice of Claim by providing a full copy of the Civil Cover sheet demanding a sum certain, Original Verified Complaint and all Exhibits". (Response, Doc. 26, 8) These steps, however, do not satisfy the applicable procedural requirements. The FTCA requires that the claimant present the notice, and then not initiate a lawsuit until the earlier of the agency adjudicating the claim or the elapse of six months. By presenting her notice on the same day as filing her lawsuit, Dougherty failed to follow the procedural requirements.

In her Response, Dougherty relies on *Williams v. United States*, 693 F.2d 555 (5th Cir. 1982). This decision, however, does not support her cause. In that case, the claimant voluntarily dismissed his civil suit because he had not presented notice to the agency. After he presented his notice and the agency denied the claim, the claimant re-filed the lawsuit in a federal district court. *See Williams*, 693 F.2d at 556. In contrast, Dougherty presented her notice to the agency on the same day as filing her lawsuit, falling far short of the statutory requirement. As a result, the Court lacks jurisdiction over her SCA claim.

### 3. Statute of Limitations

The United States also contends that the applicable statutes of limitations bar Dougherty's causes of action under the ECPA and CFAA. (Motion, Doc. 24, 5, 7) Again, the Court concludes that the United States presents a valid argument.

Under the ECPA, any action against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within 2 years after such claim accrues", or six months after final denial. 18 U.S.C. § 2712(b)(2). The claim "shall accrue on the date upon which the claimant first has a reasonable opportunity to discover the violation." *Id*. Similarly, the CFAA requires claimants to file their lawsuit "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). "A claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the claim." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); *see also Ins. Safety Consultants, LLC v. Nugent*, No. 3:15-CV-2183-S-BT, 2018 WL 4732430, at *3 (N.D. Tex. Sept. 12, 2018), *rep. & rec. adopted*, No. 3:15-CV-2183-S-BT, 2018 WL 4725244 (N.D. Tex. Sept. 30, 2018) (explaining that under the ECPA, CFAA, and SCA, "[t]he statute of limitations [] begins to run on the date the unlawful access occurs or when unlawful access is discovered.").

Dougherty filed her lawsuit on October 7, 2021. In her First Amended Complaint, she alleges that someone has monitored her computer "since at least 2010". (Am. Complt., Doc. 7, ¶ 36) In 2016, she hired security experts because she suspected unlawful surveillance. (*Id*. at ¶ 19) She describes multiple specific instances of alleged misconduct in 2018. (*See, e.g., id*. at ¶ 30 (changes to QuickBooks account), ¶ 22 (changes to legal brief), ¶ 36 (blacking out of checks), ¶ 32 (loss of access to judiciary application account)) In response to the 2018 incidents, she again hired security consultants that same year. (*Id*. at ¶ 21)

Accepting Dougherty's allegations as true, she concedes that she knew of tampering with her computer systems no later than 2016 when she hired security consultants to investigate the suspected unauthorized access. In 2018, she "noticed" changes to her electronic information and

again took responsive actions to uncover the cause. That same year, she altered her accounting practices based on her suspicions. Based on these allegations, Dougherty's claims accrued no later than 2018, significantly more than two years before she filed her lawsuit. As a result, the statute of limitations bars her causes of action under the ECPA and CFAA.[2]

Dougherty concedes that these statutes contain a two-year statute of limitations, but she argues that the continuing-violation doctrine saves her claims. (Response, Doc. 26, 9 (citing *Klehr v. AO Smith Corp.*, 521 U.S. 179, 189 (1997))) Under that doctrine, "each overt act that is a part of the violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at earlier times." *Klehr*, 521 U.S. at 189. Her reliance on *Klehr*, however, is misplaced. The Supreme Court in that decision based the continuing-violation doctrine on the specific statutory language applicable to antitrust cases. *See id.* ("Antitrust law provides that, in the case of a continuing violation . . . each overt act that is part of the violation and that injures the plaintiff . . ." (cleaned up)) (citing *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 278 (3d Cir. 1987) ("Moreover, each time a plaintiff is injured by a continuing conspiracy to violate the antitrust laws a new cause of action for damages accrues.")). Dougherty points to no statutory provision or case law suggesting that the continuing-violation doctrine, or a similar principle, applies to claims under the ECPA or CFAA, and the Court has found none.

### C. Doe Defendants

Dougherty alleges two causes of action against the Doe Defendants: (1) a claim under Section 15.05(a) of the Texas Business and Commerce Code, alleging that these defendants violated the statute "by acting in combination and/or conspiring in their acts to reduce the output of plaintiff's lawful business activities which are in opposition to the unauthorized practice of

---

[2] The same analysis would apply to Dougherty's SCA claim, to which a two-year statute of limitations also applies. *See* 18 U.S.C. § 2712(a), (b)(2) (creating two-year statute of limitations for both ECPA and SCA claims).

immigration law and to remedy the injury thereby imposed"; and (2) a *Bivens* action on the grounds that these defendants "violated plaintiff's constitutionally protected rights by their activities described herein, and/or by exceeding every state and/or federal statutory authority which concerns wiretaps, protected information, and computer access, to monitor plaintiff's activities and disrupt her business, her personal life, and to cause personal injury." (Am. Complt., Doc. 7, ¶¶ 305, 361)

The United States seeks dismissal of each cause of action. First, the United States argues that the state-law conspiracy claim is "unworkable" because Dougherty "alleges no identifying information about the government employees who are allegedly engaged in a retaliatory conspiracy against her." (Motion, Doc. 24, 7) Second, the United States argues that courts have not extended *Bivens* in the context of Dougherty's lawsuit and the fact that Congress has "legislated extensively in this area" counsels against doing so. (*Id.* at 9–11)

Dougherty fails to respond to the United States's arguments, and the Court finds that they are well-founded. First, Dougherty offers no information to identify the Doe Defendants, aside from a reference to someone named "George". (Am. Complt., Doc. 7, ¶ 39 (acknowledging that "[w]hat department, Agency, or Prosecutor's Investigator is unknown")) At times, courts permit claimants to engage in discovery to identify unnamed defendants, but the plaintiff must provide sufficient information to render it conceivable that discovery would prove successful to identify the defendants. *See Thomas v. State*, 294 F. Supp. 3d 576, 619 (N.D. Tex. 2018), *rep. & rec. adopted*, No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) (citing *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992)). Dougherty's allegations fall short of doing so, and any discovery would represent a fishing expedition. Absent any actionable identifying information, Dougherty has failed to state a claim against the Doe Defendants. *See, e.g., Richardson v. Avery*, No. 3:16-CV-2631-M-BH, 2018 WL 5269860, at *7 (N.D. Tex. Oct. 1, 2018), *rep. & rec. adopted sub nom. Richardson v. Avery #994*, No. 3:16-CV-2631-M, 2018 WL 5267577

(N.D. Tex. Oct. 23, 2018) (dismissing claims against unknown defendants for failure to state a claim due to failure to provide identifying information or allege actions that would provide a basis for identification).

Second, as the United States Supreme Court recently held, "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 596 U.S. ___ (June 8, 2022). And while she relies on the Supreme Court's Fourth and Fifth Amendment *Bivens* precedents, the facts in those cases differ materially from Dougherty's allegations. (Motion, Doc. 24, 9–10 (citing *Bivens v. Six Unknown Named Agents of Federal Nureau of Narcotics*, 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979))) She points to no analogous jurisprudence in which a federal court permitted a *Bivens* action based on factual allegations similar to her own. As a general matter, extending *Bivens* into new factual and legal territory represents a "disfavored" judicial exercise. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). And in the absence of any compelling argument, the Court declines to fashion a new *Bivens* remedy here.

Finally, to the extent Dougherty asserts her federal ECPA, SCA, and CFAA claims against the Doe Defendants, these causes of action suffer the same fatal flaws discussed previously in connection with those claims against the United States.

### D. Temporary and Permanent Injunctive Relief

In her current pleading, Dougherty requests injunctive relief, based on the alleged violations of the federal statutes by the United States and on the Texas state-law claim and *Bivens* action against the Doe Defendants. (Am. Complt., Doc. 7, ¶¶ 421, 422) As the Court has concluded that all of Dougherty's claims are subject to dismissal, she cannot succeed on a claim for injunctive relief based on those causes of action. *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (noting that injunctive relief requires the plaintiff to demonstrate irreparable injury); *Enter. Int'l, Inc. v. Corporación Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) ("Because Rule 65 confers no jurisdiction, the district court must have both subject matter

jurisdiction and in personam jurisdiction over the party against whom the injunction runs.").

### III.   Conclusion

For the reasons explained in this Order and Opinion, it is:

**ORDERED** that Defendant Department of Homeland Security's Motion to Dismiss (Doc. 24) is **GRANTED**; and

**ORDERED** that Plaintiff Marlene A. Dougherty's causes of action within her First Amended Complaint (Doc. 7) are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to close this matter.

Signed on June 8, 2022.

Fernando Rodriguez, Jr.
United States District Judge